David M. Lilienstein, SBN 218923
david@dllawgroup.com
Katie J. Spielman, SBN 252209
katie@dllawgroup.com
**DL LAW GROUP**
345 Franklin St.
San Francisco, CA 94102
Telephone: (415) 678-5050
Facsimile: (415) 358-8484

Attorneys for Plaintiff,
M.S.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| M.S. | Case No. |
| Plaintiff, | **PLAINTIFF M.S.'S COMPLAINT FOR BREACH OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 (ERISA); BREACH OF FIDUCIARY DUTY; ENFORCEMENT AND CLARIFICATION OF RIGHTS; PREJUDGMENT AND POSTJUDGMENT INTEREST; AND ATTORNEYS' FEES AND COSTS** |
| v. | |
| UNITED BEHAVIORAL HEALTH; UNITED HEALTHCARE SERVICES, INC.; DELOITTE LLP GROUP INSURANCE PLAN; and DOES 1 through 10, | |
| Defendants. | |

Plaintiff, M.S. herein sets forth the allegations of this Complaint against Defendant UNITED BEHAVIORAL HEALTH; UNITED HEATHCARE SERVICES, INC.; DELOITTE LLP GROUP INSURANCE PLAN; and DOES 1 through 10.

### PRELIMINARY ALLEGATIONS

### JURISDICTION

1.      Plaintiff brings this action for relief pursuant to Section 502 (a) (1) (B) and Section 502 (a) (3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. Section 1132 (a) (1) (B).  This Court has subject matter jurisdiction over Plaintiff's claim pursuant to ERISA Section 502 (e) and (f), 29 U.S.C. Section 1132 (e), (f), and (g) and 28 U.S.C. Section 1331 as it involves a claim

**COMPLAINT**                                                                                              **CASE NO.**

made by Plaintiff for employee benefits under an employee benefit plan regulated and governed under ERISA. Jurisdiction is predicated under these code sections as well as 28 U.S.C. Section 1331 as this action involves a federal question.

2.    This action is brought for the purpose of recovering benefits under the terms of an employee benefit plan and enforcing Plaintiff's rights under the terms of an employee benefit plan.

3.    Plaintiff seeks relief, including but not limited to: past mental health benefits in the correct amount related to Defendants' improper denial of Plaintiff's claim; prejudgment and post judgment interest; general and special damages; and attorneys' fees and costs.

### PARTIES

4.    Plaintiff M.S. is, and at all times relevant was, a resident of California.

5.    At all relevant times, M.S. participated in the DELOITTE LLP GROUP INSURANCE PLAN ("the Plan"), an employee welfare benefit plan within the meaning of ERISA section 3(1), 29 U.S.C. § 1002(1), sponsored by M.S.'s employer.

6.    Mental Health benefits under the Plan were at all relevant times administered by Defendants UNITED HEALTHCARE SERVICES, INC. and/or its subsidiary UNITED BEHAVIORAL HEALTH (both entities hereinafter referred to as "United").

7.    United is a health insurance provider authorized to transact and currently transacting the business of insurance in the State of California and is the claims administrator of the Plan.

8.    DELOITTE LLP GROUP INSURANCE PLAN is both the sponsor and administrator of the health care plan and coverage at issue herein.

9.    At all relevant times, the Plan was an insurance plan that offered, *inter alia*, mental health benefits to employees and their beneficiaries, including Plaintiff.  This action involves mental health claims denied by the Plan's mental health claim administrator.

### FACTS

10.    The Plan guarantees, warrants, and promises "Mental Health Services" for members and their beneficiaries, including but not limited to: health care services, mental health care, and treatment at issue herein.

11.    A.S. is M.S.'s son, and was, at all relevant times, a beneficiary of the Plan.

12.     At all relevant times, the Plan was in full force and effect.

13.     The Plan guarantees, promises, and warrants benefits for medically necessary covered health care services.

14.     The Plan defines "Medically Necessary" health care services as:

Healthcare services provided for the purpose of preventing, evaluating, diagnosing or treating a Sickness, Injury, Mental Illness, substance abuse disorder, condition, disease or its symptoms, that are all of the following as determined by the Plan, or its designee.  The services must be:

- In accordance with Generally Accepted Standards of Medical Practice;
- Clinically appropriate, in terms of type, frequency, extent, site and duration, and considered effective for your Sickness, Injury, Mental Illness, substance abuse disorder disease or its symptoms;
- Not mainly for your convenience or that of your doctor or other health care provider; and,
- Not more costly than an alternative drug, service(s) or supply that is at least as likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of your Sickness, Injury, disease or symptoms.

15.     The Plan guarantees coverage for inpatient and outpatient treatment of mental health conditions.

16.     California's Mental Health Parity Act, Health & Safety Code §1374.72, as well as the Federal Mental Health Parity and Addictions Equity Act of 2008 ("MHPAEA") specifically require that health care plans provide medically necessary diagnosis, care and treatment for the treatment of specified mental  health illnesses at a level equal to the provision of benefits for physical illnesses.

17.     A.S. was diagnosed with, *inter alia,* anxiety, Obsessive Compulsive Disorder, Attention Deficit Disorder ("ADD"), severely impaired executive functioning, and disordered eating.

18.     A.S. has a long history of mental illness and serious emotional disturbances.

19.     As early as preschool it was noted that A.S. experienced difficulty with focus, attention, and forming  social  connections.   By  the  time  he  was  in  second  grade,  A.S.  had  received  an

**COMPLAINT**                                                                                           **CASE NO.**

Individualized Education Plan ("IEP") at school, with assistance for learning disabilities, occupational therapy, and speech therapy.

20.    As he progressed into middle school, A.S. developed even more serious anxiety problems, experiencing several "meltdowns" at home.  Eventually his anxiety reached such levels that he was unable to be left alone in a room (including a rest room), only feeling safe in his bed under a blanket. For months he felt compelled to walk in close step with an adult from room to room and went through an elaborate ritual which allowed him to feel "safe."

21.    Not long after these symptoms manifested A.S. was diagnosed with Anxiety and Obsessive Compulsive Disorder.  He began intense psychological therapy sessions and a daily medication regimen.  Eventually A.S. began to feel safe using a restroom by himself and spending periods of time alone in a room.

22.    In his middle teens, A.S.'s family noted he was eating and drinking very little, frequently refusing food.  His growth slowed and his weight was at a lower range of the normal scale.  On the advice of one of A.S.'s treaters, he was assessed at the Stanford Eating Disorder Clinic.  A.S. was diagnosed with Disordered Eating and was monitored by the Eating Disorder Clinic for several months.

23.    A.S. continued to suffer from his Eating Disorder into high school.  He would only eat after constant reminders and continual parental pressure.  He would also refuse to use the restroom while in school which caused him to suffer severe constipation and painful urination due to crystals forming in his urine.  A.S. missed many days of school per semester due to his refusal to care for himself.

24.    During this time A.S. became increasingly isolated from social contacts.  Efforts by his family to involve him in family meals or outings resulted in violent refusals which involved striking himself and repetitive hitting of furniture until it was broken.

25.    As he continued through high school A.S. showed more frequent signs of forgetfulness and being unfocused, frequently losing personal items, forgetting even such basic things as to put on his shoes before leaving his home.  A.S. was provided with different medications to combat his ADD by his therapist but none of them were successful.

COMPLAINT                                                                                                  CASE NO.

26.     A.S.'s parents attempted numerous treatments to help their son, including Steps to Success Educational Therapy, a special needs caregiver, psychological and psychiatric therapy, implementing strict rules and guidelines at home for A.S. to follow with the help of a Family Therapist, and A.S.'s mother meeting with a therapist specializing in eating disorders to try to find foods her son would eat.

27.     Despite the many therapeutic interventions put in place for him, A.S. was unable to get up for school on time, perform basic hygiene, get dressed, eat, prepare his lunch, and leave for school. He was only interested in online gaming to the exclusion of nearly everything else in his life.  A.S.'s parents had exhausted their available options, and their son was coming closer and closer to malnutrition and/or dehydration.

28.     A.S.'s treating providers recommended he be treated at Aspiro Vantage Point ("Aspiro"), an intensive outdoor treatment program, and he was admitted there.  During his time at Aspiro it became clear that A.S. required much more intensive therapy than Aspiro could provide, in a 24/7 setting.

29.     At the recommendation of his treatment providers, A.S. was subsequently admitted to Daniels Academy Residential Treatment Center ("Daniels").

30.     At all times relevant, A.S.'s treatment at Daniels was medically necessary, based upon the reasoned medical opinions of his treaters.

31.     Plaintiff filed claims for mental health benefits pursuant to the terms of the Plan for A.S.'s treatment at Daniels.

32.     United approved 14 days of treatment, then denied the remainder of Plaintiff's claims for treatment at Daniels.

33.     Plaintiff timely appealed United's denials of A.S.'s claims for treatment at Daniels.

34.     United denied Plaintiff's appeal.

35.     In denying Plaintiff's claim for care and treatment for A.S., United used "level of care guidelines" that are unfair and biased against approving claims for residential treatment

**COMPLAINT**                                                                                        **CASE NO.**

such as are at issue herein, and that do not reflect reasonable standards in the medical community.

36. The level of care guidelines used by United to deny A.S.'s care fall below reasonable standards of care in the medical community, as explained by the court in *Wit v. United Behavioral Health*, 2019 WL 1033730 (N.D.Cal. March 5, 2019).

37. United breached the generally accepted standard of care herein, as it did in the *Wit* case, by failing to accept and consider that treatment is not limited to simply alleviating an individual's current mental health symptoms, and by ignoring and failing to consider the long-term, chronic nature of A.S.'s mental health needs.

38. United breached the generally accepted standard of care herein, as it did in the *Wit* case, by failing to accept and consider that effective treatment of co-morbid, or co-occurring behavioral health disorders requires consideration of the interaction of these disorders, and the implications of these disorders on determining the proper and appropriate level of care.

39. United breached the generally accepted standard of care herein, as it did in the *Wit* case, by failing to accept and consider that where there is ambiguity over the proper level of care, that practitioners should err on the side of caution and should place patients in the higher level of care.

40. United breached the generally accepted standard of care herein, as it did in the *Wit* case, by improperly focusing on acute symptomology and failing to consider that the same level of care is needed when an acute crisis has passed, and by failing to consider the likelihood of regression and risk of further acute symptomology.

41. All of the above failures, *inter alia*, constitute an abuse of discretion by United in the handling of A.S.'s claims for mental health care and treatment.

42.     As a result, Plaintiff was forced to pay for A.S.'s care and treatment at Daniels from his own personal funds.

43.     Plaintiff has exhausted all administrative remedies regarding the denial of A.S.'s mental health benefits.

### CLAIMS FOR RELIEF
### FIRST CAUSE OF ACTION
**Recovery of Benefits Due Under an ERISA Benefit Plan**
**(Against UNITED BEHAVIORAL HEALTH; UNITED HEALTHCARE SERVICES, INC.; DELOITTE LLP GROUP INSURANCE PLAN; DOES 1-10; Enforcement and Clarification of Rights, Prejudgment and Post Judgment Interest, and Attorneys' Fees and Costs, Pursuant to ERISA Section 502(a)(1)(B), 29 U.S.C. Section 1132(a)(1)(B))**

44.     Plaintiff incorporates all preceding paragraphs of this Complaint as though fully set forth herein.

45.     ERISA Section 502(a)(1)(B), 29 U.S.C. Section 1132(a)(1)(B) permits a plan participant to bring a civil action to recover benefits due under the terms of the plan and to enforce Plaintiff's rights under the terms of a plan.

46.     At all relevant times, Plaintiff and his son, A.S. were insured under the health care plan at issue herein, and Plaintiff's son, A.S., met the covered health services and medical necessity criteria for treatment required under the terms and conditions of the Plan.

47.     By denying Plaintiff's mental health claim, Defendants have violated, and continue to violate, the terms of the Plan, the terms of ERISA, and Plaintiff's rights thereunder.

48.     The provisions of an ERISA plan should be construed so as to render none nugatory and to avoid illusory promises.

### SECOND CAUSE OF ACTION
**Breach of Fiduciary Duty Under ERISA § 502(a)(3), 29 U.S.C. Section 1132(a)(3)**
**(against Defendants UNITED BEHAVIORAL HEALTH; UNITED HEALTHCARE SERVICES, INC.; DELOITTE LLP GROUP INSURANCE PLAN; DOES 1-10)**

49.     Plaintiff incorporates all preceding paragraphs of this Complaint as though fully set forth herein.

50.     ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), requires fiduciaries to discharge their duties solely in the interests of employee benefit plan participants and

**COMPLAINT**                                                                                          **CASE NO.**

beneficiaries and for the exclusive purpose of providing benefits and defraying reasonable expenses of administering the plan.

51.     ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), requires fiduciaries to discharge their duties with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

52.     ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), requires fiduciaries to discharge their duties in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of ERISA.

53.     In committing the acts and omissions herein alleged, Defendants breached their fiduciary duties in violation of ERISA §§ 404(a)(1)(A), (B) and (D), 29 U.S.C. §§ 1104(a)(1)(A)(B) and (D).

54.     Plaintiff is further informed and believes, and thereon alleges, that Defendants have approved identical or comparable benefits to other participants under circumstances similar to those of the Plaintiff. The failure to provide benefits to Plaintiff when they have done so for other Plan participants in similar circumstances constitutes a breach of fiduciary duties in violation of ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B).

55.     As a result of Defendants' breaches of fiduciary duty, Plaintiff has been harmed, and the Defendants have been permitted to retain assets and generate earnings on those assets to which Defendants were not entitled.

56.     Wherefore, Plaintiff is entitled to appropriate equitable relief including but not limited to injunction, disgorgement, and surcharge.

## **PRAYER FOR RELIEF**

### **AS TO ALL DEFENDANTS**

**WHEREFORE,** Plaintiff prays that the Court grant the following relief:

COMPLAINT                                                                                          CASE NO.

57. Declare that Defendants, and/or each of them, violated the terms of the Plan by failing to provide mental health benefits;

58. Order Defendants, and/or each of them, to pay the mental health benefits due, together with prejudgment interest on each and every such benefit payment through the date of judgment at the rate of 9% compounded;

59. For appropriate equitable relief pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), including but not limited to a declaration of Plaintiff's rights hereunder with respect to Defendants UNITED BEHAVIORAL HEALTH; UNITED HEALTHCARE SERVICES, INC.; DELOITTE LLP GROUP INSURANCE PLAN; an injunction against further failure to provide like benefits; disgorgement of any profits or ill gotten gain realized by any Defendant; and surcharge for any pecuniary injuries Plaintiff has suffered as a consequence of Defendants' breaches of their ERISA fiduciary duties;

60. Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA Section 502(g), 29 U.S.C. Section 1132(g);

61. Provide such other relief as the Court deems equitable and just.

**AS TO ALL CAUSES OF ACTION:** For such other and further relief as the Court deems just and proper.

Dated: September 3, 2021        Respectfully submitted,

**DL LAW GROUP**


By: */s/ David M. Lilienstein*
David M. Lilienstein
Katie J. Spielman
Attorneys for Plaintiff, M.S.

COMPLAINT        CASE NO.